ARTURO BALDRICH COLÓN, Appellant, *v.* THE REGISTRAR OF PROPERTY OF GUAYAMA, Respondent.

No. 1382. Decided September 17, 1962.

*Víctor M. Pons* for appellant. The respondent registrar did not appear.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

Carmen Joglar Vázquez was the owner of a rural farm situated in the Municipality of Cayey. She had acquired it, according to the registry, "by title of adjudication of intestate inheritance." On August 30, 1917, while married to Clodomiro Colón, she sold it to Antonio Ramírez Muñoz for the price of $6,000, which payment was deferred for five years, the purchaser binding himself to pay interest on that amount at the monthly rate of one per cent. By the same deed of sale, Ramírez Muñoz "in order to secure the sum of six thousand dollars, amount of the price of the farm, and its interest at the monthly rate of one per cent, payable by monthly installments at the rate of sixty dollars on each installment, executed a voluntary mortgage on that farm in favor of Carmen Joglar y Vázquez . . .," as it appeared from the fourth inscription of the aforesaid farm.

On May 9, 1927, the mortgagee Carmen Joglar Vázquez, then "widow of Colón," executed a public deed by virtue of which, pursuant to the 14th inscription of said farm, "confesses to have received prior to the act of the execution . . . the six thousand dollars of the aforesaid mortgage with its interest at the rate set forth and by virtue thereof executes the most solemn receipt and consents to the total cancellation of the above-mentioned lien which entirely encumbered the farm under this number and likewise consents that such mortgage cancellation be entered in this Registry." In that inscription dated May 1, 1927, the registrar stated:

"Therefore and in view of the fact that the mortgage executed in this case *was the separate property of the mortgagee Carmen Joglar y Vázquez,* but it earned interest at the rate of sixty dollars per month for a period of five years, which are community property belonging to the partnership existing between Carmen Joglar herself and her husband Clodomiro Colón y Ramos, the mortgage having been expressly made extensive to the interest earned during its effectiveness, the cancellation

is recorded as to the mortgage credit capital *and it is denied as to the guarantee for interest since the legitimate heirs of the deceased Clodomiro Colón Ramos, husband of the cancelling mortgagee Carmen Joglar y Vázquez,* have not given their consent to the cancellation and instead cautionary notice is entered for the legal term in favor of the solvent debtor..." (Italics ours.)

No appeal was filed against this denial. The farm was subject to subsequent transfers. In 1941 it belonged to several persons. On that same year appellant Arturo Baldrich Colón acquired it from them. Upon recording it in his favor it was stated: "It is encumbered by the mortgage interest stated in the fourth inscription . . . . ." From the registrar's certificate attached to the appeal it appears that:

". . . from the record entries it does not appear that when Arturo Baldrich acquired the farm he expressly bound himself to the payment of the principal or interest of the mortgage executed by the deed . . . on August thirty-one, nineteen hundred and seventeen, which is the mortgage object of the fourth inscription."

On August 27, 1942 a marginal note was entered in the above-mentioned fourth inscription which entry was made by reason of the mortgage deed of 1917, of a complaint filed in the District Court of Guayama by the heirs of Clodomiro Colón Ramos against Arturo Baldrich, in which judgment was requested against the latter for "the sum of $1,410 as principal, plus interest on the aforesaid sum at the annual rate of 6 per cent from August 2, 1921 until the aforesaid sum is paid . . . and in any case it be provided in the judgment that the property of this number be sold at public auction in order to pay the plaintiffs, with the proceeds thereof, the amount of the mortgage credit." On June 28, 1944 judgment was rendered in that action dismissing the complaint. When this judgment became final and unappealable by virtue of an order of the clerk of that court, the aforesaid notice of lis pendens was totally cancelled on November 30, 1944.

On January 8, 1960—after 37 years of the expiration of the mortgage credit, which belonged separately to Carmen Joglar Vázquez had elapsed, and 32 years after the date of its total cancellation authorized by her—Arturo Baldrich Colón, as owner and possessor of the property pursuant to the registry, requested the registrar of property to proceed to cancel "the mortgage in question . . . in so far as that it guarantees the interest of the credit."

On March 31, 1960 the registrar denied the cancellation by a note which reads:

"The cancellation in this document is hereby DENIED because although the principal of the mortgage credit was extinguished by payment of May 29 (*sic*) 1927, its cancellation was denied as to the interest on May 31 of said year; that the action for the collection of said interest is the mortgage foreclosure which prescribes in twenty years, which term has not expired, said prescription having been interrupted on August twenty-seven, nineteen hundred and forty-two, upon entering notice of a complaint to recover said interest without the twenty years having elapsed from said interruption on the said date and although the complaint claiming them was dismissed and consequently its entry cancelled by judicial order, said dismissal and cancellation of notice of lis pendens did not affect the interruption which was caused; that although petitioner Arturo Baldrich is a third person under the Mortgage Law and especially for the purposes of art. 114 of the same, the truth is that when Baldrich acquired the property described in the deed, the refusal of cancellation of the interest sought to be cancelled appeared from the registry and hence, the effectiveness of the mortgage as to said interest in the amount or to the extent established by said art. 114 (special mortgage) being responsible for its payment, without in any way affecting to the contrary the fact that the mortgagees did not request the extension for the interest pursuant to art. 115 on mortgages it being unnecessary in the case at bar; cautionary notice having been entered instead for the legal term of 120 days in favor of Arturo Baldrich Colón at folio 136 of volume 100 of Cayey, property number 1364, septuplicated, entry F."

■■ Against this denial the interested party timely appealed. In his brief he prays for reversal and to order the respondent registrar to cancel the mortgage as to the interest covered and protected thereby. The registrar has not presented any brief in defense of his note of refusal.[1]

We consider the registrar's refusal to definitively cancel the mortgage lien as to the interest to be clearly erroneous.

Let us admit for the time being that the registrar's refusal to cancel it fully in 1927 was correct. Such refusal was limited "...as to the guarantee for interest since the legitimate heirs of the deceased Clodomiro Colón Ramos, husband of the cancelling mortgagee..." have not given their consent to the cancellation.

---

[1] Appellant notified him his brief on May 6, 1960. On May 16 respondent requested the first extension to present it and he was granted up to the 27th day of that month. He did not present it within that first extension. On the following June 1, setting forth that "he is interested in stating his reasons in defense of his note since he considers that the case so deserves it and that his decision will solve a question which is, to a certain extent, novel" and that he had "notes with which to prepare his brief," requested "a final and definitive extension" until June 27. The term was extended to the 15th day of that month. Within that second extension he did not present it either. On June 16, he asked for a third extension by telegram, "until the end of the month" in order to "finish the brief." His term was extended again until June 27. Again he failed to file his brief within this last extension. Two years have elapsed since.

In his note the registrar does not cite any legal provisions, case law or doctrine in support of his refusal to cancel. Since 1914 we have been insisting that in appeals of this kind the registrars should always submit to some length the reasons on which they base their decisions and cite authorities in support thereof so that this Court may be in a position to decide the questions raised with confidence that it has heard the arguments for and against each contention and, consequently, with greater certainty of accuracy. *Alvarez* v. *Registrar*, 21 P.R.R. 462, 463 (1914); *Amy* v. *Registrar*, 21 P.R.R. 114, 116 (1914). Once more we insist that the line of conduct marked in these cases should be followed. It concerns the compliance with a legal duty imposed by the Act of March 1, 1902, on administrative appeals, which in its § 2 provides that "...the interested party may, either in person or by attorney, submit written argument to the Court, in support of his right..."

If the respondent had "notes with which to prepare his brief" and that he needed additional time which he was granted to "finish the brief" and has allowed more than two years to elapse without filing it, without offering any good excuse to justify the noncompliance of a serious duty, he deserves our severest condemnation.

■ Since the husband's death, possibly in 1921,[2] the mortgage credit had ceased to earn interest for the conjugal partnership. As respects every one, on May 9, 1927—date in which Carmen Joglar Vázquez cancelled in full the mortgage which belonged to her because she had separately "received . . . the six thousand dollars of the aforesaid mortgage with its interest." But also accepting the fact that at the time of cancelling it her husband was living and that the latter's consent would have been necessary for the validity of the cancellation of the mortgage insofar as it secured the payment of the community interest, such interest as to third persons, could be no other than that set forth by art. 114 of the Mortgage Law,[3] that is, those of the last two years past (from August 31, 1924 to August 31, 1926) and that part of the current year which may have accrued—from September 1, 1926 to May 9, 1927.

■ From this last date until January 8, 1960, day in which Baldrich Colón, as owner of the property, requested the registrar to definitively cancel the mortgage insofar as said interest are concerned, an uninterrupted period of 32 years and 8 months had elapsed. However, said registrar refused to cancel because the foreclosure proceeding to collect those interest had not prescribed "said prescription having been interrupted on August twenty-seven, nineteen hundred and forty-two upon entering notice of a complaint to recover said interest without twenty years having elapsed from said interruption on said date."

---

[2] From the text of the notice of the complaint in the registry it is inferred that Clodomiro Colón Ramos had died in August 1921, because his heirs only claimed in 1942 from Baldrich half of the compound interest of the credit accrued from August 31, 1917 to August 2, 1921, which half amounted to $1,410.

[3] Article 114 of the Mortgage Law provides:

"A mortgage constituted to secure a credit which earns interest, shall secure with regard to third persons, in addition to the principal, only the interest for the two years last past and that part of the current year which may have accrued."

There was never any interruption of the prescriptive period to institute the foreclosure proceeding for the collection of those two years last past and the part of the current year which may have accrued against third parties, if it is admitted, of course, that such foreclosure proceeding subsisted after the mortgagee cancelled the mortgage guarantee, fully and definitively, in relation to the principal of $6,000 as well as to the interest earned until then.

The complaint filed in August 1942 by the heirs of the deceased husband of the mortgagee against Baldrich Colón, notice of which was entered in the registry, was one which claimed the payment of $1,410, to which half of the interest of the credit amounted, capitalized until August 2, 1921,[4] that is, of 50 per cent of the interest accrued since the credit was constituted on August 31, 1917, until August 2, 1921, date in which, as we have said, we believe that the mortgagee's husband died. "The interest on the aforesaid sum ($1,410) at the annual rate of 6 per cent from August 2, 1921 until the aforesaid sum is paid" were also claimed.

No claim was made whatsoever for the payment of the interest of the mortgage credit accrued between August 31, 1924 and May 9, 1927, that is, those corresponding to the last two years past and the accrued part of the current year.

Since the period comprised between May 9, 1927 and January 8, 1960 was not interrupted in any way, the final cancellation of the mortgage lien was proper as respects the interest thereon, and the registrar should have cancelled it upon the request of Baldrich Colón as owner of the property affected by the lien, pursuant to the provisions of the last paragraph of art. 388-B of the Mortgage Law in force (30 L.P.R.A. § 704), which reads as follows:

---

[4] It can not be conceived that said sum of $1,410 claimed by the heirs of the husband, who apparently were not heirs of the wife, was part of the mortgage capital, which was, wholly, a separate credit of Carmen Joglar Vázquez.

"On the lapse of one year from the date on which this Act takes effect [it refers to Act No. 12, approved on August 29, 1923] and on petition of the aforesaid interested parties, registrars shall cancel the mortgage referred to in this section [mortgage liens expired for twenty (20) years, or constituted for that long if they have no expiration date] without need of any notice whatever, if the filing of suit to recover the same or the subsistence of such liens is not shown in the registry."

As we said in *Pagán* v. *Registrar*, 71 P.R.R. 448, 451 (1950), the purpose of art. 388-B of the Mortgage Law is to eliminate from the Registry those liens which because of the time elapsed since their constitution, should be assumed not to exist.

Article 134 of the Mortgage Law as well as § 1864 of the Civil Code provides that the mortgage action shall prescribe after twenty years from the time such action could have been brought in accordance with the recorded deed. The mortgagee is bound to know the law and knows, therefore, that if he is not diligent, in time, the debtor may request the registrar to cancel the registration of the mortgage lien already expired. *Soto* v. *Registrar*, 51 P.R.R. 230, 233 (1937).

As stated in III *Nueva Enciclopedia Jurídica Española* 623, the cancellations permit that the content of the registry be adapted to actual truth, that at all times an adequate congruence be sought so as to avoid whenever possible the publicity of extinguished juridical situations.

Our statutes point to a definite policy on the part of the legislature respecting the rapid cancellation in the registry of entries without juridical content, which appear to be lien situations which actually do not exist, and pursuant thereto it established [5] in the registry a summary procedure to cancel

---

[5] Besides art. 347 *et seq.* of the Mortgage Law and the counterparts of its Regulations on the releasing of liens, see Act No. 12 of August 29, 1923; No. 12 of June 25, 1924; Nos. 18, 19, and 20 of July 9, 1936; No. 106 of May 12, 1937; No. 20 of April 26, 1943; No. 14 of April 7, 1945; and 1 *Lecciones de Derecho Hipotecario* 334-44 by the teacher, MUÑOZ MORALES.

them as stated in *Alejandro* v. *Registrar*, 50 P.R.R. 633 (1936) and *Olivero* v. *Registrar*, 50 P.R.R. 637 (1936).

 This legislative policy should not be ignored. The cancellation of a mortgage that has prescribed, besides extinguishing its entry in the registry, also extinguishes the real right of mortgage. The modern doctrine considers that the cancellation is a right of the debtor. MARTÍNEZ ESCOBAR, *La Hipoteca* 247.

It may be that the term "registral via crucis" is an adequate designation for the set of experiences unduly suffered by third persons with reference to the final cancellation of the mortgage lien executed in 1917, fully paid in 1927, and still effective in 1962, respecting the interest.

In the first place, we believe that the deed of total cancellation executed by the mortgagee Carmen Joglar Vázquez on May 9, 1927, was legally sufficient to produce in the registry the total and final cancellation of the mortgage credit with reference to the principal as well as the interest thereon, and that the refusal of the registrar to cancel it as to its interest was erroneous. In the case at bar we can not order anything respecting that refusal because the interested party accepted it by failing to file in 1927 an administrative appeal against same.

██ We say it was erroneous because Carmen Joglar Vázquez, as the separate owner of the real mortgage right which was recorded, had sufficient juridical standing to release it in full and she did not need the consent of the legitimate heirs of her deceased husband to do so. Let us see.

It appeared from the registry that the credit belonged to her separately. She had the exclusive right of its free administration and disposal. The collection of its interest and the issuance of receipts were her own administrative faculties.[6] In the sale contract of the farm which was her separate prop-

---

[6] *Cf. Veve et al.* v. *Fajardo Sugar Growers' Assn.*, 18 P.R.R. 277, 285 (1912); §§ 92 and 93 of the Civil Code.

erty the purchaser "bound himself to pay the vendor" the price of six thousand dollars and its interest at the monthly rate of one per cent and as guarantee "he executes voluntary mortgage on this farm in favor of Carmen Joglar Vázquez."

██ In the obligations to give payment, payment shall be made "to the person in whose favor the obligation is constituted, or to another authorized to receive it in his name," and when it is made in good faith to the person who is in possession of the credit—Carmen Joglar was always in its possession according to the registry—it shall release the debtor. Sections 1116 and 1118 of the Civil Code.

The Mortgage Law requires in art. 82, that for the cancellation of records made by virtue of a public instrument, *"the person in whose favor the entry may have been made,* or his assigns or legal representatives signify their consent to the cancellation." We have already seen that the record owner of the real mortgage right, according to the registry, was Carmen Joglar Vázquez, the cancelling creditor.

The recorded real right shall be considered extinguished among other cases, "when the recorded right in realty also ceases to exist, whether by virtue of the provisions of the law . . . or by virtue of the natural effect of the contract causing the registration, as in the case of a mortgage when the mortgagor pays his debt." Article 132, Mortgage Law Regulations, second paragraph.

██ Respecting third persons the total cancellation executed by Carmen Joglar Vázquez as owner of the recorded real right, definitively extinguished the mortgage guarantee respecting the principal as well as the protected interest, since in that cancellation none of the causes of nullity listed in art. 98 of the Mortgage Law concurs. As to the parties— under the hypothesis of the existence of the conjugal partnership during "the two years last past and that part of the cur-

rent year"—already art. 97 of the Mortgage Law provides that "the cancellation of records or cautionary notices does not per se extinguish, as to the parties, the recorded rights affected thereby." In that way the right of the community partnership to claim from Carmen Joglar Vázquez the interest accrued during the marriage on the mortgage credit remained subsistent, although devoid, after the cancellation of the mortgage guarantee.

 The eventual participation which might correspond to the conjugal partnership in the fruits, rents, or interest of the separate property of its members, should not operate as a limitation of their juridical capacity to "freely dispose of their respective separate estates" nor that the wife may "contract . . . in all cases referring to . . . her own property . . . or administration conferred on her by the law . . . ," as provided by §§ 92 and 93 of the above-mentioned Civil Code.

Applying in 1913 that § 92—which corresponded to § 160 of the Civil Code of 1902, as amended in 1904—to a situation analogous to the one in the case at bar, in *Arias et al.* v. *Registrar of Property*, 19 P.R.R. 1115, 1116-7 we decided:

"From the foregoing it appears that the Registrar of Property of Ponce recorded the mortgage credit, the cancellation of which originated this appeal, as the private property of the wife and also entered the statement made by her attorney in fact regarding the origin of the money and the fact that it was not community property but her own personal property as it was the proceeds of what she had contributed to the conjugal partnership. We are confronted, then, with a record which states that the exclusive ownership of the said mortgage credit is in the wife and neither this court nor the registrar can disregard that entry and the juridical value it possesses as to the ownership of that property right while it remains in effect, as we held in the case of *Succession of Fuster* v. *The Registrar of Property*, 19 P.R.R. 121. Therefore, as it appears from the registry that the said credit was the exclusive property of the wife who executed the deed of cancellation in favor of the ap-

pellant debtors, according to section 160 of the Revised Civil Code as amended in the year 1904, she did not need the consent of her husband to cancel it and the instrument should be admitted to record. See section 160 of the Revised Civil Code as amended in the year 1904.

"For this reason the decision appealed from should be reversed."

In the second place we find the refusal of the registrar dated September 15, 1944, which was the first time that he was requested to cancel the notice of the complaint of the heirs of the husband, in which they claimed from Baldrich Colón the interest earned by the credit from August 31, 1917, until August 2, 1921. The notice of lis pendens had been entered on August 27, 1942. On June 28, 1944 judgment was rendered dismissing the complaint. When this judgment became final and unappealable the registrar was requested to cancel the notice of lis pendens. The registrar refused to cancel it because "the term of 4 years set forth by paragraph (b) of art. 388-A of the Mortgage Law to make such cancellations has not elapsed." The party had to appeal to the trial court so that the latter would order the immediate cancellation of the notice of lis pendens so that the registry would cease to proclaim the pendency of a litigation which had been definitively decided by final and unappealable judgment against the party in whose favor the notice of lis pendens was entered.

In the third and last place, we are confronted with a refusal to definitively cancel the mortgage as to its interest on account of the interruption of the 20-year period which was never interrupted as it has been shown.

The registrar's note should be reversed and the final cancellation in his registry requested by appellant should be made.